IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| UNITED STATES OF AMERICA | **I N D I C T M E N T** |
| v. | Case No.  3:21-cr-203 |
| ENROY ONEIL DUNCAN | Violation:  18 U.S.C. §§ 981(a)(1)(C), 1343, and 28 U.S.C. § 2461(c) |

At times relevant to this Indictment:

### The Scheme to Defraud

1. ENROY ONEIL DUNCAN was a resident of Grand Forks, in the State and District of North Dakota, and enrolled in classes at the University of North Dakota.

2. Homeinhome Senior Care LLC ("Homeinhome") was a Colorado corporation formed in or around March 2018 with an Employer Identification Number ("EIN") 824839709. DUNCAN was listed as the registered agent per the Colorado Secretary of State's website.

3. Homeinhome's status was listed as delinquent as of August 1, 2019. Homeinhome filed a Restated Constituent Document with the Colorado Secretary of State in or around September 2020, which listed an address of 715 N. 40th Street, Apartment 105H, Grand Forks, North Dakota.  This was also the residential address of DUNCAN, which was a ground-level apartment in an apartment complex located near the campus of the University of North Dakota. For the time period of approximately October 2020 to the present, no business operations appeared to be conducted out of that location. According to the North Dakota Secretary of State's website, Homeinhome has not registered as a business in the State of North Dakota.

4. According to the Colorado Department of Labor and Employment ("CDLE") as of June 1, 2021, no records in the name of Homeinhome could be located.

5. According to Job Service of North Dakota, as of June 7, 2021, no records in the name of Homeinhome or under the "EIN" of 824839709 could be located.

6. Internet searches of publicly available information did not return a dedicated website for Homeinhome. A review of www.federalpay.org indicated Homeinhome was in the industry of nursing care facilities and had received a Paycheck Protection Program ("PPP") loan from the United States Small Business Administration ("SBA") through Funding Circle in the amount of $333,390 in or around June 2020. This website also listed Homeinhome as an LLC located at 715 N. 40th Street, Apartment 105H, Grand Forks, North Dakota.

7. A national search for a National Provider Identifier ("NPI") was conducted for both DUNCAN and HomeinHome Senior Care, LLC. No results were found. For a healthcare provider to be in business and comply with Health Insurance Portability and Accountability Act ("HIPAA") regulations, an NPI is required. According to the website, CMS.gov (Centers for Medicare and Medicaid Services), the NPI is a unique identification number for covered health care providers. Covered health care providers and all health plans and health care clearinghouses must use the NPIs in the administrative and financial transactions adopted under HIPAA.

8. Quontic Bank was a federally insured financial institution based in New York, NY. Quontic participated in the SBA's PPP as a lender, and, as such, was authorized to lend funds to eligible borrowers under the terms of the PPP loan program.

9. Gate City Bank was a federally insured financial institution based in Fargo, North Dakota. DUNCAN maintained personal accounts and business accounts in the names of Homeinhome Senior Care LLC and EOD Tax and Computing Services LLC at Gate City Bank for which he was the sole account signatory. These accounts were opened in or around June 2020.

10. Funding Circle was a company that characterized its business as "the largest online small business loans providers" that specialized in small-business lending, including SBA loans. Funding Circle was based in London, England, with U.S. branch offices in San Francisco, California, and Denver, Colorado. Company 1 participated in the SBA's PPP by, among other things, acting as a service provider between small businesses and certain banks, including Quontic. Small businesses seeking PPP loans could apply through Funding Circle for PPP loans. Funding Circle would review the loan applications, and if approved, Funding Circle would partner with a lender, such as Quontic, to disburse the loan funds to the applicant.

11. The United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters. As part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans have government-backed guarantees.

12. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in March 2020 and designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. Two sources of relief provided by the CARES Act were the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). The other was in the form of Economic Injury Disaster Loans ("EIDL") made available to assist small businesses and nonprofit organizations meet financial obligations and operating expenses that could have been met had the disaster not occurred.

13. To obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application (SBA Form 2483), the small business (through its authorized representative) was required to certify, among other things: (a) that the small business was in operation on February 15, 2020; (b) average monthly payroll expenses; and (c) number of employees. These figures were used to calculate the amount of money the small business is eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation showing their payroll expenses. Applicants must meet (and certify) certain requirements, including that the small business was in operation on February 15, 2020, had employees, and had average monthly payroll costs.

14.     The PPP loan application further required the business (through its authorized representative) to certify whether the applicant or any individual owning 20 percent or more of the equity of the business was subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought.

15.     A PPP loan application was processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were guaranteed by the SBA. Data from the application, including the information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

16.     PPP loan proceeds were required to be used on certain permissible expenses, including payroll costs, mortgage interest, rent, and utilities. Under the applicable PPP rules and guidance, the interest and principal on the PPP loan is eligible for forgiveness if the business spent the loan proceeds on these expense items within a designated period of time and used a certain portion of the loan towards payroll expenses.

## **Manner and Means**

17.     DUNCAN devised a scheme to defraud Quontic, Funding Circle, and the SBA by filing a false and fraudulent application for PPP funds. The purpose of the scheme was for DUNCAN to unjustly enrich himself by obtaining PPP loan proceeds under false and misleading pretenses, including by making false statements about the number of Homeinhome employees, payroll expenses, and the intended use of the loan proceeds.

18. On or about June 12, 2020, DUNCAN submitted a false and misleading PPP application ("PPP Application 1") to Funding Circle in the name of Homeinhome seeking approximately $339,390 in PPP funds. PPP Application 1 was electronically signed by DUNCAN on or about June 25, 2020, from an IP address assigned to a mobile device. DUNCAN certified that PPP Application 1 and the information provided in all supporting documents and forms was true and accurate.

19. On PPP Application 1, DUNCAN falsely stated that Homeinhome's average monthly payroll was $133,356 and that the company had approximately 17 employees. In addition, DUNCAN submitted with the PPP Application 1 what purported to be an Employer's Annual Federal Tax Return ("IRS Form 944") for Homeinhome for 2019. On the purported IRS Form 944, DUNCAN falsely claimed that Homeinhome had paid $1,600,279.70 in wages, tips, and compensation. DUNCAN also listed the paid preparer of the IRS Form 944 as Logan & Logan Accounting. Open source information did not reveal any accounting firms in this name, EIN, telephone number, or address provided by DUNCAN on the IRS Form 944.

20. DUNCAN also included an IRS Form 1040 Schedule C for 2019 along with PPP Application 1. DUNCAN indicated that Homeinhome had an income of $1,766,513 in 2019 and wages of $1,600,279.

21. As a result of DUNCAN's material falsehoods and omissions, Funding Circle approved PPP Application 1 on or about June 28, 2020. On or about July 1, 2020, Funding Circle originated a wire transfer in the amount of $339,390, from Denver,

Colorado, to DUNCAN's Homeinhome Senior Care business account at Gate City Bank, in Fargo, North Dakota.

## COUNT ONE

## Wire Fraud

The Grand Jury Charges:

Paragraphs 1 through 21 are realleged and incorporated by reference as if fully set forth herein.

Beginning in or around June 2020, and continuing until in or around July 2020, in the District of North Dakota and elsewhere,

### ENROY ONEIL DUNCAN,

for the purpose of executing the scheme described above, caused to be transmitted by means of wire communications in interstate commerce the signals for the transfer of $339,390 from an account in Denver, Colorado, to an account in Fargo, North Dakota;

In violation of Title 18, United States Code, Section 1343.

## FORFEITURE ALLEGATION

The Grand Jury Further States There is Probable Cause That:

Upon conviction of one or more of the offenses charged in this Indictment,

ENROY ONEIL DUNCAN

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all of his right, title, and interest in any property, real or personal, which constitutes or is derived from proceeds traceable to violation(s) of 18 U.S.C. § 1343.

If any of the assets described above as being subject to forfeiture pursuant to 18 U.S.C. §§ 982(a)(1) and/or 28 U.S.C. § 2461(c), as a result of any act or omission of ENROY ONEIL DUNCAN:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred to, sold to, or deposited with, a third person;

    c.    has been placed beyond the jurisdiction of the Court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), to seek forfeiture of any other property of said defendant up to the value of said property described above as being subject to forfeiture.

A TRUE BILL:

/s/ Foreperson
Foreperson

/s/ Nicholas W. Chase
NICHOLAS W. CHASE
Acting United States Attorney

MDG/vlt